Michael Herring was the owner of a patent covering the whole of the land in dispute. He conveyed to Keetley, under whom the defendant claims, by deed of 6 February, 1778, calling for its "beginning at a pine tree of Jacob Herring and George Graham's land, and running with George Graham's line, and the same course continued to a corner, including 100 acres of land running a north course to the patent line." This deed begins at the letter D, in the diagram hereunto annexed, and continues with Graham's line O, N, M, and to L. If the same course be continued to the letter T, and a north line to U, it will contain 100 acres. No marked trees are found on the line T, U, nor any marked corner at T. The plaintiff proposed to show by parol evidence that a marked line from L to K was the true line of the Keetley deed. But the court charged the jury that as no corner was actually named in the deed, no parol evidence was admissible to establish a line, in contradiction to the deed, which would give less than 100 acres.
Michael Herring had conveyed to the plaintiff by deed of 18 May, 1805, which after several lines, called for "Richard Keetley's corner, a pine, then with Keetley's line south 98 poles to a pine standing by the side of Graddy Herring's fence." The plaintiff proved that at the time (475) of this conveyance Michael Herring and his son, Graddy Herring, to whom the deed was given, actually ran to K and thence to L, where there had stood the pine by Graddy Herring's fence. The son of Richard Keetley was present at this running, and made no claim beyond it. It was also proved that Keetley sent his son to show his line, who had showed the line K L. The marked line K L is two years younger than the deed from Herring to Keetley, and some years older than the deed to plaintiff. The plaintiff proved a possession between the lines K L and T U for more than seven years after his deed from Michael Herring, and the defendant proved an agreement in 1803 between Keetley and Herring at the period of Herring's entering upon the land *Page 353 
in dispute, to straighten each one's fence, and to occupy each a part of the lands of the other. Keetley died in 1806. The fences continued as fixed in 1803 until the present parties differed and this suit was brought; and the defendant insisted that Herring's possession was not adverse to Keetley's. The defendant also attempted to show a possession between the lines. One witness, who did not speak with confidence, thought the corner pine at L, then a decayed stump, was within the defendant's fence. A witness for the plaintiff stated positively that the stump was without the defendant's fence.
The court charged the jury that the plaintiff had not shown a sufficient color of title; that as Michael Herring, under whom the plaintiff claimed, had himself sold to Keetley, and the true line of the Keetley deed was T U, no sufficient evidence was given by plaintiff to extend his line beyond that line.
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 4 N.C. 353.]
It has been very properly admitted in the argument of this case that the deed under which the defendant claims covers the lands in dispute. And the only point material to be considered is whether the plaintiff's deed covers the same lands. If it do, he should then have been let in to prove his possession under it, and a new trial ought to be awarded.
The principles in Bradberry v. Hooks, ante, 443, go the full length of deciding this cause. The deed to the plaintiff calls for a pine at Keetley's corner. This, the plaintiff contends, is at K, on the plat; the defendant, that it is at U. Now, Keetley's corner is admitted to be at U, and no pine appears at K or U. But the deed, when at Keetley's corner, then calls for a pine near Graddy Herring's fence, which is stated to be at L; and, therefore, contends the counsel, as the plaintiff proved on the trial, that when the grantor run the land, previously to making the deed to his son, the plaintiff, the surveyor actually run the line from K to L; that, *Page 354 
therefore, this deed, which was afterwards written, though not as founded upon a plat then made by the surveyor, shall be understood as (477) bounded according to the running of the surveyor. And it is moreover insisted that as Keetley himself recognized that as his own line, that, therefore, it shall be so.
Now, it will hardly be contended that the line running from Keetley's
corner can alter the location of such corner; and as to the other corner, a pine near Graddy Herring's fence, though the line is to run there, yet the grantor (who, it seems, was not acquainted with the boundary himself) is cautious enough to say that from Keetley's first corner called for the line shall run to the pine near Graddy Herring's fence with Keetley's line. Keetley's line is in virtue of a prior ancient deed from the same grantor. The deed was upon record, and had that permanency to which it was entitled under the law; and though it contains a fixed quantity of land, yet, as to the line in question, it did not profess to be bounded either by trees or even a stake, but was to be run in such way as to include quantity. Keetley's boundary, therefore, could not be mistaken; it could not be altered; and was not subject either to the recollection of "old men" or of common report; but would, at any length of time, speak the same language and have the same effect. When that is made the line by which the line between the plaintiff and defendant is to run, it must speak for itself. But with respect to the surveyor's running off the land before the father executed the deed to the son, it cannot possibly have any influence, for the question again recurs, What have the parties made the dividing line, by the deed, and do the deeds lap upon each other?
Then, as to the conduct of Keetley in recognizing the line contended for as his true line: If, in so doing, he was guilty of a fraud, and plaintiff was a purchaser, it would be good ground for going into a court of equity to compel him to abide by it, but it could certainly pass no title to the plaintiff.
The danger of letting in evidence as to the actual intention of the parties to a deed for the purpose of controlling it when it professes to be governed by a previously existing old line, and which line is placed upon the public record of the country as well for purchasers as (478) creditors, must be obvious to every one who believes in either the frailty or corruption of men.
Wherefore, we are all of opinion the rule for a new trial should be discharged.
NOTE. — See Bradberry v. Hooks, ante, 443, and the cases referred to in the note.
Cited: Cherry v. Slade, 7 N.C. 92. *Page 355